UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
DANA WATTS and YADIRA MOSQUERA,                      :
on behalf of themselves and all others similarly     :
situated,                                            :
                                                     :       **MEMORANDUM AND ORDER**
                              Plaintiffs,            :
                                                     :           06-CV-6042 (DLI)(SMG)
              - against -                            :
                                                     :
JACKSON HEWITT TAX SERVICE INC.,                     :
JACKSON HEWITT INC., TAX SERVICES OF                 :
AMERICA, INC., MAP COMPUTAX NY, INC.                 :
MANDEEP SOBTI, and ANJEET SOBTI,                     :
                                                     :
                              Defendants.            :
------------------------------------------------------------- x
**DORA L. IRIZARRY, United States District Judge:**

Plaintiffs Dana Watts and Yadira Mosquera, on behalf of themselves and other similarly-

situated customers of Jackson Hewitt Tax Services, Inc., brought an action against the latter for

its allegedly deceptive pricing practices, naming as additional defendants Map Computax NY,

Inc. (a Jackson Hewitt agent), its owner Mandeep Sobti, and Anjeet Sobti, a Jackson Hewitt

franchisee (collectively, the "Sobti Defendants").  On April 24, 2007, Jackson Hewitt and the

Sobti Defendants moved to dismiss all causes of action.  On August 16, 2008, this court granted

the motions as to plaintiffs' New Jersey Consumer Fraud Act claim, but denied them as to

plaintiffs' other four claims.[1]

On August 26, 2008, the Sobti Defendants counterclaimed, alleging that plaintiffs: (1)

misappropriated confidential information; (2) aided and abetted certain unnamed Sobti

Defendant employees in breaching their fiduciary duty; and (3) tortiously interfered with the

---

[1] *See Watts v. Jackson Hewitt Tax Service Inc.*, 579 F. Supp. 2d 334, 339–40 (E.D.N.Y. 2008).
The remaining claims are for violation of New York General Business Law § 349, violation of
New York City Administrative Code § 20.741.1, common law fraud, and common law unjust
enrichment.

contracts of those employees. (Answer at 21–24.)  On December 1, 2008, plaintiffs moved to dismiss the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss at 10–20.)  For the reasons set forth below, plaintiffs' motion is granted in its entirety.

## I.     Factual Allegations

The parties' familiarity with the facts and procedural history of this matter is assumed. *See generally Watts*, 579 F. Supp. 2d 334.  All of the counterclaims arise out of the same factual allegation.  The Sobti Defendants claim that certain of their unnamed employees or former employees acted in concert with plaintiffs in order to misappropriate confidential information. (Answer at 21.)  Specifically, they contend that plaintiffs induced these unnamed employees to bring them unredacted customer tax return information. (Sur-Reply at 2.)  The Sobti Defendants also claim that plaintiffs were aware of these employees' employment/confidentiality agreements with the Sobti Defendants (the "Agreements"). (Answer at 23.)  The Sobti Defendants have incorporated three of these Agreements into their filings, as examples of their typical employment contracts. (*See generally id.* Ex. A–B; Sur-Reply, Ex. C).[2]

In support of their allegations, the Sobti Defendants also refer to two additional groups of documents produced by plaintiffs during pre-trial discovery.  The first are several third-party customer bills (the "2005 Bills"), each containing the customer's name, contact information, and Social Security number, along with a single, non-itemized charge called the "Tax Preparation" fee.  The latter is in some cases supplemented with applicable taxes and discounts, but the 2005 Bills do not provide an itemized breakdown of individual service fees. (*See* Sur-Reply, Ex. A at 1, 5, 9, 12.)  The second group of documents consists of several printed computer screen images, displaying the Jackson Hewitt ProFiler® computer program (the "screen shots").  The screen

---

[2] The employees who signed these three Agreements are not parties to this lawsuit.  The court is unaware of any legal action between them and the Sobti Defendants in this or any other court.

shots, which were neither viewable by nor provided to the third-party customers, each display the customer's name and the specific fees for individual services, such as preparation of a 1040 Short Form. (*See* Sur-Reply, Ex. A at 3, 8, 10, 13.)

Plaintiffs do not deny that they are in possession of these documents. However, they dispute the allegation that they obtained them through tortious conduct. According to plaintiffs, "prior to commencement of this action, various seasonal employees at Jackson Hewitt franchise offices owned by the Sobti Defendants . . . voluntarily approached a law firm bearing [the] documents . . . ." (Pls.' Resp. to Sur-Reply at 1.) Although plaintiffs concede that the documents might contain confidential information, they deny wrongdoing on the grounds that they did not "*use* any confidential customer identifying information in their Complaint or elsewhere." (*Id.* at 2.) Furthermore, plaintiffs contend that they require these documents to establish their *own* harm at the hands of the Sobti Defendants. (Mot. to Dismiss at 22–23.) Accordingly, plaintiffs move to dismiss all three counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs also move to dismiss pursuant to the equitable doctrines of laches and unclean hands. With respect to the former, plaintiffs claim that the Sobti Defendants' delay of 21 months between the initiation of this action and the filing of their counterclaims causes them undue prejudice. (Mot. to Dismiss at 20.) Regarding the unclean hands doctrine, plaintiffs claim that because the Sobti Defendants are the ultimate tortfeasors, they "should be the ultimate bearer of any damages that they sustain as a result." (*Id.* at 25.) As set forth more fully below, because defendants have failed to state a claim upon which relief can be granted as to any of their counterclaims, the court need not address either equity doctrine at this time.

## II. Discussion

### A. Standard of Review

"In deciding a motion to dismiss a counterclaim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept the allegations in the counterclaim as true and draw all reasonable inferences in the counterplaintiff's favor." *Mercer Capital, Ltd. v. U.S. Dry Cleaning Corp.*, No. 08-CV-5763 (LTS)(JCF), 2009 WL 2163598 (S.D.N.Y. July 21, 2009) (citations omitted). "To survive a motion to dismiss, [the counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell Atlantic v. Twombly,* 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (citations and internal quotations omitted).

A counterclaim cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the [counterclaim] are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). The Second Circuit has interpreted the foregoing language to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the [counterclaim] *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007). Recently, this standard was clarified by the Supreme Court, which stated that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (citations and internal quotations omitted).

### B. Misappropriation of Confidential Information

Misappropriation of confidential information is a common-law business tort applicable to cases involving unfair competition. *See American Bldg Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 311 (N.D.N.Y. 2007). In New York, this tort "generally applies to cases where former *employees* utilize confidential information in the form of trade secrets." *Feinberg v. Poznek*, No. 113133/05 (EHL), 2006 WL 2056489, at *3 (N.Y. Co. Sup. Ct. July 5, 2006) (emphasis added); *see also Roy Exp. Co. Establishment v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (noting that such claims involve the misappropriation of another's labor for "commercial advantage"). Plaintiffs in this case have never been employees of the Sobti Defendants, nor are they involved in a competing business. As such, they are not within the category of persons against whom a misappropriation action may be brought. *See Roy Exp. Co. Establishment*, 672 F.2d at 1105; *see also Vision Specialty Food Prod., Inc. v. Ultimate Gourmet, L.L.C.*, No. 01-CV-3497 (LMM), 2001 WL 1506008, at *5 (S.D.N.Y. Nov. 26, 2001) (dismissing misappropriation claim in part for failing to allege that defendants were employees of plaintiff); *Feinberg*, 2006 WL 2056489, at *4 (dismissing misappropriation claim in part because documents in question were not used to create a competing business).

The Sobti Defendants attempt to circumvent this threshold requirement by alleging a conspiracy between plaintiffs and "unnamed former employees." (Defs.' Mem. Opp'n Mot. at 11.) As an initial matter, "New York does not recognize an independent cause of action for civil conspiracy to commit a tort." *Campbell v. Barclays Bank PLC*, No. 9443/08 (AMS), 2009 WL 1912098, at * 8 (Kings Co. Sup. Ct. July 2, 2009) (citing *Pappas v. Passias,* 271 A.D.2d 420,

421 (2d Dep't 2000)).  "Allegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of New York, Inc. v. Fritzen,* 68 N.Y.2d 968, 969 (1986).  In the absence of a misappropriation tort against their employees, the Sobti Defendants have no "actionable tort" with which to connect plaintiffs, and, thus, the conspiracy argument cannot stand. *See id.*; *see also Davidcraft Corp. v. Danu Intern., Inc.*, No. 90-CV-6578 (CMM), 1992 WL 162997, at *5 (S.D.N.Y. June 24, 1992) ("liability for engaging in a conspiracy cannot exist absent a finding of liability for the underlying tortious act.").

Even if a misappropriation action were cognizable against these plaintiffs, the Sobti Defendants' counterclaim fails on its face.  In New York, to prevail on a claim for the misappropriation of confidential or proprietary information, a party must demonstrate: "(1) that the information constituted a trade secret, and (2) that the defendant used that trade secret (3) in breach of an agreement, a confidential relationship or duty, or as a result of discovery by improper means." *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 600 (E.D.N.Y. 2000) (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999)).

With respect to the first element, a trade secret is a "formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Abernathy-Thomas Eng'g Co.*, 103 F. Supp. 2d at 600.  The Sobti Defendants do not allege that the third-party information constitutes a *trade secret*; they allege only that it is *confidential*.  This allegation, by itself, does not satisfy the pleading requirement, for confidentiality is only part of

the trade secret analysis.[3]  Furthermore, the Sobti Defendants do not allege that the information

in question gave them "an advantage over [their] competitors." *Abernathy-Thomas Eng'g Co.*,

103 F. Supp. 2d at 600.  Doing so would be futile: the 2005 Bills reveal only the totals that

several Jackson Hewitt customers paid for their tax preparation services, and the screen shots

merely itemize these totals. (*See* Sur-Reply, Ex. A.)  Even if plaintiffs were competitors in the

tax preparation business, which they are not, these documents would provide them no greater

competitive advantage over the Sobti Defendants than would a shopper's itemized grocery store

receipt to a competing grocery store.

   The misappropriation counterclaim also fails with respect to the second and third

elements.  The Sobti Defendants do not allege that plaintiffs themselves used the information in

breach of an "agreement, confidential relationship, or duty." *Abernathy-Thomas Eng'g Co.*, 103

F. Supp. 2d at 600.  Thus, analysis of these elements turns on whether they have sufficiently

pleaded that plaintiffs used their trade secrets as a "result of discovery by improper means." *Id.*

"Discovery by improper means" refers not to abuses of the civil discovery process, but rather to

industrial espionage. *See id.* at 601; *see also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 487

(1974) (using burglary, wire-tapping, and bribery as examples of methods by which trade secrets

may be misappropriated).  Even if the court accepts defendants' bald allegation that plaintiffs

induced unnamed employees to deliver the 2005 Bills and screen shots, this conduct simply is

---

[3] *See Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407 (1993) (citing Restatement of Torts § 757 cmt. b (1939) for six factors in determining a trade secret: "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.").

not the equivalent of "industrial espionage" as it is commonly understood. *See Kewanee*, 416 U.S. at 487; *Abernathy-Thomas Eng'g Co.*, 103 F. Supp. 2d at 601.

In any case, while unnamed employees clearly delivered the information, mere conclusory statements that they did so pursuant to plaintiffs' underhanded prodding fails to raise this allegation "above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). That such actions occurred is certainly *possible*, but the plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (citations and internal quotations omitted).

### C. Aiding and Abetting Breach of Fiduciary Duty

A prerequisite to an aiding and abetting claim of the type brought by the Sobti Defendants is an adequately pled claim for the underlying breach of fiduciary duty. *See DeBlasio v. Merill Lynch & Co., Inc.*, No. 07-CV-318 (RJS), 2009 WL 2242605, at *32 (S.D.N.Y. July 27, 2009) (citing *Kottler v. Deutsche Bank AG,* 607 F. Supp. 2d 447, 466 (S.D.N.Y. 2009)); *see also IIT, an Intern. Inv. Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir. 1980); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, No. 08-CV-7508 (SAS), 2009 WL 2828018, at *18 (S.D.N.Y. Sept. 2, 2009) (dismissing similar claim in part because of failure "to adequately plead any other primary violation against defendants or a non-party."). As the Sobti Defendants have brought no action for the underlying breach, against either plaintiffs or a third party, this counterclaim fails on its face.

Even if the underlying breach were sufficiently pled, the aiding and abetting counterclaim falls short with respect to its requisite elements. "Under New York law, a [party] seeking to establish a cause of action for aiding and abetting a breach of fiduciary duty must show: (1) the existence of a violation by the primary (as opposed to the aiding and abetting) party; (2)

knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 303 (2d Cir. 2006) (citations and internal quotations omitted). A claimant must also show that it "suffered damage as a result of the breach." *Kramer v. Lockwood Pension Serv., Inc.*, No. 08-CV-2429 (DAB), 2009 WL 2878100, at *18 (S.D.N.Y. Sept. 1, 2009) (quoting *AHA Sales, Inc. v. Creative Bath Prod., Inc.*, 58 A.D.3d 6, 23 (2d Dep't 2008).

Regarding the third element, "[s]ubstantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Constantin Assoc. v. Kapetas*, No. 601305/2006 (BJF), 2007 WL 4294732, at *4 (N.Y. Co. Sup. Ct. Dec. 6, 2007) (citations and internal quotations omitted). Here, the Sobti Defendants allege that plaintiffs instructed certain of the Sobtis' unnamed employees to provide plaintiffs access to the information in question. The Sobti Defendants set forth no sworn allegations of fact, however, indicating how plaintiffs "substantially assisted" the unnamed employees in obtaining the documents. *See Constantin Assoc.*, 2007 WL 4294732, at *4. Insofar as the Sobti Defendants imply that simply receiving the documents constituted "fail[ure] to act when required to do so" (*id.*), "the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." *United States v. District Council of New York City*, No. 90-CV-5722 (CSH), 2007 WL 2697135, at *17 (S.D.N.Y. Sept. 17, 2007) (citations and internal quotations omitted). The Sobti Defendants have not alleged that plaintiffs, as their former customers, owe them a fiduciary duty; indeed, "a conventional business relationship" is insufficient to establish such a duty. *See AHA Sales, Inc.*, 58 A.D.3d at 21. As with the misappropriation claim, the aiding and abetting claim

does not rise above the speculative level, and does not "permit the court to infer more than the mere possibility of misconduct." *Ashcroft*, 129 S. Ct. at 1950; *see also Twombly*, 550 U.S. at 555.

### D.     Tortious Interference with Contracts

"[T]he case law is clear that agreements that are terminable at will are classified as only prospective contractual relations, and thus cannot support a claim for tortious interference with existing contracts." *Snyder v. Sony Music Entm't Inc.*, 252 A.D.2d 294, 299 (1st Dep't 1999) (citing *American Preferred Prescription, Inc. v. Health Mgmt., Inc*, 252 A.D.2d 414, 417 (1st Dep't 1998); *see also Orange County Choppers, Inc. v. Olaes Enters, Inc.*, 497 F. Supp. 2d 541, 562 (S.D.N.Y. 2007) (dismissing claim in part because allegations left open possibility that contract was terminable at will).  The Agreements cited by the Sobti Defendants as representative of their employment contracts are undeniably "at will" agreements. (*See* Sur-Reply, Ex. C at 1 ("You are an employee at will and we can terminate you with or without cause for any reason, or no reason, at any time."); Answer, Ex. A at 1 (same); Answer, Ex. B at 2 (same).)  This is fatal to the claim that plaintiffs tortiously interfered with the Sobti Defendants' employee contracts.

This counterclaim would not survive a motion to dismiss even if the Agreements could support a tortious interference action.  To establish such a claim under New York law, a claimant must show: "(1) existence of a valid contract between [itself] and a third party; (2) the defendant's knowledge of the contract; (3) the intentional procurement of a breach of the contract without justification; (4) actual breach of the contract and (5) damage to the [claimant]." *Cardiocall, Inc. v. Serling*, 492 F. Supp. 2d 139, 151 (E.D.N.Y. 2007); *see also Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

With respect to the third element, a claimant "must show that there would not have been a breach but for the activities of defendants." *Innovative Networks, Inc. v. Young*, 978 F. Supp. 167, 180 (S.D.N.Y. 1997) (citations and internal quotations omitted). The Sobti Defendants allege that plaintiffs induced unnamed employees to turn over customer information, in violation of the confidentiality provisions enshrined in their Agreements. Such a conclusory allegation epitomizes a "context[] where . . . amplification is needed to render the [counterclaim] plausible." *Iqbal*, 490 F.3d at 157–58. Despite this, the Sobti Defendants have failed to supplement their claim with further factual allegations as to how plaintiffs' activities were the "but for" cause of any contractual breaches. *See Innovative Networks, Inc.*, 978 F. Supp. at 180. They have not alleged, for example, which employees were involved, how they were contacted by plaintiffs, when or where the transactions occurred, or why at-will employees would place their livelihood in jeopardy for plaintiffs by violating their Agreements. As with the other counterclaims, the "sheer possibility that a defendant has acted unlawfully" is insufficient as a matter of law to save the instant motion. *Ashcroft*, 129 S. Ct. at 1949.

Regarding the fifth element, damage to a claimant must be actual. *See AIU Ins. Co. v. Robert Plan Corp.*, No. 603159-2005 (BJF), 2007 WL 2811366, at *9 (N.Y. Co. Sup. Ct. Sept. 26, 2007) (dismissing claim in part for failure to specify monetary damages). The Sobti Defendants have failed to allege any monetary damages, other than unspecified "lost business opportunities and revenues." (Answer at 24). To the extent any lost opportunities or revenues are due to the apparent fraudulent conduct engaged in by the Sobti Defendants as alleged by plaintiffs, the counterclaims cannot survive. Therefore, the tortious interference action fails to state a claim on these grounds alone. *See AIU Ins. Co.*, 2007 WL 2811366, at *9.

### E.     Defendants' Other Requested Relief

In addition to damages for plaintiffs' alleged torts, the Sobti Defendants seek dismissal of plaintiffs' underlying claims, or alternatively, an order barring the use of the 2005 Bills and screen shots in this litigation. (Answer at 24–25.)  To the extent that the former request is a motion for this court to reconsider its earlier decision, the motion is denied.  With respect to the latter, given that the right to such injunctive relief is anything but "plain from the undisputed facts," the court declines this request as well. *Family Affair Haircutters v. Detling*, 110 A.D.2d 745, 747 (2d Dep't 1985); *see also AIU Insurance Co.*, 2007 WL 2811366, at *9 (denying injunctive relief where plaintiffs acknowledged they were not "at the moment specifically monetarily damaged.").  It would be anomalous for this court to find plaintiffs' claims plausible enough to survive a motion to dismiss, and then suppress the very evidence needed to prove those claims. *See Watts*, 579 F. Supp. 2d at 342 (describing evidence of the "15% multiplier that the defendants are alleged to have assessed automatically on every customer").  The Sobti Defendants may not circumvent the court's prior decision in this manner.

### III. Conclusion

For the reasons set forth above, plaintiffs' motion to dismiss is GRANTED as to all three counterclaims. As defendants have had ample opportunity to correct any deficiencies in their answer, leave to amend the counterclaims therein is DENIED. Plaintiffs are reminded to take all necessary steps to prevent dissemination of any and all personal, third-party information. The parties shall continue with discovery as directed by Chief Magistrate Judge Steven M. Gold.

SO ORDERED.

Dated: Brooklyn, New York
   November 13, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge
